FILED
United States Court of Appeals
Tenth Circuit

July 23, 2014

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

BILLY G. MARSHALL,

  Plaintiff - Appellant,

v.

L.D. ORMAND; ROBERT BEEBE;
T. DURFEY; TRACY MCCOLLUM;
MARK KNUTSON,

  Defendants - Appellees.

No. 14-6070
(D.C. No. 5:13-CV-00865-HE)
(W.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **KELLY**, **BALDOCK**, and **BACHARACH**, Circuit Judges.[**]

Plaintiff Billy Marshall, proceeding pro se, appeals the district court's summary dismissal of his 42 U.S.C. §1983 claim alleging procedural due process violations in the resolution of a prison disciplinary matter.[1]  Plaintiff also seeks

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[**] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore ordered submitted without oral argument.

[1] We construe Plaintiff's pro se filings liberally. See Garza v. Davis, 596 F.3d 1198, 1201 (10th Cir. 2010).

leave to proceed *in forma pauperis* ("IFP"). For the following reasons, we grant the petition to proceed IFP and affirm the district court's judgment.

## I.

The following is a summary of the facts as stated in Plaintiff's complaint and of course, "well-pleaded facts [in Plaintiff's complaint] must be taken as true." Ruiz v. McDonnell, 299 F.3d 1173, 1181 (10th Cir. 2002). In April 2013, as Plaintiff proceeded with his food through the prison mess hall, a prison employee asked him to tuck-in his shirt tail. He did not immediately comply and the prison official repeated the request. Plaintiff, again, did not comply. This led to a verbal altercation in which the employee allegedly used racial slurs and in response Plaintiff stated he would kill the employee or anyone else who put their hands on him. Plaintiff filed a written grievance with prison administration about the employee's use of racial slurs. In the grievance, Plaintiff reiterated he would kill "any staff" who laid hands on him. This statement triggered prison disciplinary proceedings. The disciplinary committee determined Plaintiff had committed a "menacing" offense and assigned Plaintiff to maximum security housing.[2] According to Plaintiff, inmates in maximum security are segregated from the general population, are "normally on lockdown 23–24 hours" a day, and are sometimes housed with other inmates. At the time of his appeal, Plaintiff states he has been in maximum security for over 400 days.

---

[2] Plaintiff's brief at p. 4: Misconduct Offense Code 05-5 defines "menacing" as threats of bodily harm or death to a staff member or citizen.

Plaintiff unsuccessfully sought review of the disciplinary action within the prison grievance system arguing the prison did not allow defense witnesses at any stage of the disciplinary process. Plaintiff then filed this action in the United States District Court. A Magistrate's Report and Recommendation ("R&R") reasoned Plaintiff's claims were foreclosed by Heck v. Humphrey, 512 U.S. 477 (1994). The district judge did not adopt the magistrate's reasoning. Instead, on review of the Magistrate's R&R the court held Plaintiff's allegations established no protected liberty interest that might give rise to a due process claim. Accordingly, the court summarily dismissed Plaintiff's complaint under 28 U.S.C. § 1915A for failure to state a claim upon which relief can be granted. When a claim is dismissed under 28 U.S.C. § 1915A we review the dismissal *de novo*. Thomas v. Guffey, 367 F. App'x 957, 958–59 (10th Cir. 2010).

II.

The question that concerns us is whether Plaintiff's placement in maximum security created a protected liberty interest that might give rise to a procedural due process claim for failure to allow witnesses during the prison disciplinary process. The threshold inquiry in a due process analysis is to identify whether a protected liberty interest is at stake. Wilkinson v. Austin, 545 U.S. 209, 221 (2005). Liberty interests "may arise from an expectation or interest created by state laws or policies." Estate of DiMarco v. Wyoming Dep't of Corr., Div. of

Prisons, 473 F.3d 1334, 1339 (10th Cir. 2007) (citing Wilkinson 545 U.S. at 221). In the case of prisoners this "in no way implies that these. . . [interests] are not subject to restrictions imposed by. . . the regime to which they have been lawfully committed." Wolff v. McDonnell, 418 U.S. 539, 556 (1974). The key is balancing the prison's necessary discretionary authority with the protections due process provides. Id. at 566. Prison disciplinary proceedings can create a protected liberty interest if they impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" or "inevitably affect the duration of. . . [the prisoner's] sentence." Sandin v. Conner, 515 U.S. 472 (1995).

To determine whether a disciplinary proceeding creates such a burden, the court must "identify… the baseline from which to measure what is atypical and significant in any particular prison system." Estate of DiMarco, 473 F.3d at 1340. In Estate of DiMarco, the plaintiff was housed in solitary conditions for over a year. We used the following to help establish a baseline for whether her confinement conditions created a protected liberty interest: (1) Whether the segregation furthers a legitimate penological interest such as safety, (2) whether the conditions in the placement are extreme, (3) whether the punishment impacts the inmate's duration of incarceration, and (4) whether the placement was indeterminate. 473 F.3d at 1342. No single factor is dispositive and the factors

4

are not all inclusive. Id. In analyzing whether the placement is indeterminate the court considered placement duration and frequency of placement review. Id. While no time limit for placement in administrative housing exists, a panel of this court has held a 399-day administrative detention does not create a protected liberty interest. Hill v. Fleming, 173 F. App'x 664, 672 (10th Cir. 2006) (unpublished). To determine if Plaintiff's confinement conditions create a protected liberty interest we apply the same analysis here.

We begin by looking for a legitimate penological interest. Plaintiff's placement in maximum security is the consequence of verbal and written threats to kill prison employees who laid hands on him. Segregating a prisoner as a consequence of death threats serves the legitimate penological interest of safety for both staff and other prisoners. See Estate of DiMarco, 473 F.3d at 1342 (noting safety is a legitimate penological interest). This factor weighs against Plaintiff. Second, we determine if the confinement conditions are extreme in nature. Plaintiff does not give substantial detail as to the conditions in maximum security; however, we do know he is not housed alone. Although this in itself is not conclusive evidence the conditions are not extreme, it distinguishes Plaintiff's claim from solitary confinement cases. See Wolff 418 U.S. at 594 (noting solitary confinement is in a distinct category as compared to other deprivations). Plaintiff also states the unit is normally in lockdown 23–24 hours per day. Lockdown

5

periods in prison housing for inmates who may pose a safety risk are not unexpected or extreme. Given Plaintiff is not housed alone and lockdowns in themselves are not extreme, this factor does not weigh in Plaintiff's favor. Third, Plaintiff's term of incarceration is not impacted. Plaintiff is serving an 85% sentence and is not yet eligible to accumulate good behavior credits; this weighs against Plaintiff. Finally, we look to the duration of the placement. Plaintiff did not specify how long he will be in maximum security, how often his status is reviewed while housed there, nor a typical timeframe for similar situations. At the time of his appeal, Plaintiff states he has been in maximum security for "over 400 days." This exceeds the 399-day time period in Hill, though by how much is not clear. Construing the facts in a light most favorable to Plaintiff, this factor could weigh in Plaintiff's favor.

Weighed together, the factors as applied to the facts provided by Plaintiff do not show his confinement in maximum security housing creates a protected liberty interest. They do support a conclusion that living in maximum security is indeed more restrictive than ordinary prison living. The difference, however, is not so extreme as to rise to a level of atypical or significant. See Sandin 515 U.S. at 486 (holding "discipline in segregated confinement d[oes] not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest"). Therefore, Plaintiff's placement in maximum security housing

6

does not create a protected liberty interest that would give rise to a due process claim. We therefore need not reach Plaintiff's procedural due process claim because "[w]e need reach the question of what process is due only if the inmate[] establish[es] a constitutionally protected liberty interest." Wilkinson, 545 U.S. at 221. Plaintiff did not establish a protected liberty interest and thus fails to state a claim upon which relief can be granted; the district court properly dismissed the Plaintiff's complaint.

IV.

Plaintiff also petitions the court to proceed IFP. Though his claims were ultimately without merit, they were not so frivolous or unreasoned as to imply bad faith. See 28 U.S.C. § 1915(a)(1) & (a)(3). No evidence suggests Plaintiff's monthly income exceeds his monthly expenses by any significant amount such that he would have had sufficient income to pay the filing fees at the time he sought appeal. Cf. Brewer v. City of Overland Park Police Dep't, 24 F. App'x 977, 979 (10th Cir. 2002) (unpublished). Therefore Plaintiff's petition to proceed IFP is GRANTED.

\*\*\*

For the reasons set forth above, the judgment of the district court as to Plaintiff's due process claim is AFFIRMED.

Entered for the Court,


Bobby R. Baldock
United States Circuit Judge